HOEFER MANUFACTURING CO. *v.* FORD MOTOR CO.

1. PRINCIPAL AND AGENT—SALES—BREACH OF CONTRACT.

In action for breach of contract to purchase special machines to be constructed for defendant, finding of trial court that company making contract for said machines was acting as agent for plaintiff, and that defendant is bound thereby, *held*, justified by record.

2. SALES—BREACH OF CONTRACT—DELAY—DAMAGES.

In action for breach of contract to purchase special machines to be constructed for defendant, latter's claim that cancellation was justified by plaintiff's delay, and that there was no sufficient proof of damages, *held*, without merit.

Error to Wayne; Warner (Glenn E.), J., presiding. Submitted October 14, 1931. (Docket No. 112, Calendar No. 35,489.) Decided January 4, 1932.

Assumpsit by Hoefer Manufacturing Company, an Illinois corporation, against Ford Motor Company, a Delaware corporation, for breach of contract for purchase of special machines. Judgment for plaintiff. Defendant appeals. Affirmed.

*Anderson, Wilcox, Lacy & Lawson* (*Julian G. McIntosh* and *Helen W. Miller,* of counsel), for plaintiff.

*Longley & Middleton,* for defendant.

SHARPE, J. On June 9, 1920, the defendant gave four purchase orders for special machines at stated prices to the Cadillac Tool Company, delivery to be made in October, and on June 14th it, in turn, issued similar orders to the plaintiff. The price stated

thereon was 15 per cent. less than in the orders from the defendant. On September 29th the defendant notified the Cadillac Tool Company that it canceled the orders, as it was apparent delivery could not be made as agreed, and the cancellation was accepted by that company and plaintiff notified by telegram to that effect. To this the plaintiff replied that it would be "unable to accept cancellation unless the Ford Motor Company will pay us in full for all work to date, and at the same time, return to us the blue prints which they have in their possession." (These prints were afterwards returned.)

Negotiations for an adjustment having proved unsuccessful, plaintiff brought this action to recover its damages due to the alleged breach of contract by the defendant. On trial by the court without a jury, a judgment was rendered in its favor for $4,000. Defendant has appealed therefrom.

The meritorious question presented is: Was the Cadillac Tool Company acting for the plaintiff as its agent in securing the orders from the defendant?

While the orders were given direct to the Cadillac company, it appears that Mr. Hoefer, the secretary and manager of the plaintiff, had been consulted about the manufacture of the machines, and had conferred with the defendant's engineers relative thereto. It cannot be doubted that it was expected and well understood that the orders given were to be turned over to the plaintiff by the Cadillac company. The orders on their face stated that the price to be paid was "Net 30 days. F. O. B. Freeport, Ill.," where plaintiff's plant was located. Mr. Campbell, at that time a salesman for the Cadillac company, testified that Mr. Hoefer "came to us and we obtained this order for him from the Ford Motor Company. * * * The Cadillac company obtained

the order from Ford for Hoefer not I. * * * The intention was, of course, that it would go to Hoefer.''

The Cadillac company was not a manufacturer. It acted as sales representative for a number of such companies, and secured a large number of orders that year from the defendant. But, as before stated, it was understood by it, when these orders were given, that the machines were to be manufactured and delivered by the plaintiff company. The defendant had theretofore bought certain equipment direct from the plaintiff, but, after the plaintiff had appointed the Cadillac company its sales representative in Detroit, all orders thereafter would naturally be given to it.

While the orders from the defendant to the Cadillac company were for ''special tapping machine,'', ''special 2-way machines,'' ''special machine to drill,'' and ''special machines'' to be operated in a particular way, in all of the orders sent by the Cadillac company to the plaintiff they were referred to as ''Special Hoefer'' machines, and all of them provided that the design of the machines was ''to be O. K.'d by Ford engineers before starting work on patterns and machining.''

After the orders were given, there was considerable correspondence between the defendant and the plaintiff relative to them. In a letter dated August 4, 1920, defendant wrote plaintiff, ''The writer would appreciate a progress report of all our orders by return mail,'' and on the next day wrote, stating that it would ''expect you to give us a progress report every week.'' In a letter written on August 11th it refers to the Cadillac company as ''your representatives in this city,'' and on October 11th wrote that it had ''canceled the orders for these motors.''

It also appears that certain motors were sent by the defendant direct, to be used by plaintiff in the

manufacture of the machines ordered, and that these were charged to the plaintiff on the books of the defendant.

The trial court found that the Cadillac Tool Company was acting as the agent or representative of the plaintiff in making the contracts with the defendant, and that the defendant is bound by the terms thereof. In our opinion, the record justifies this finding. *American Enameled Brick & Tile Co.* v. *Brozek,* 251 Mich. 7; *Earl Fruit Co.* v. *Herndon Fruit Co.,* 253 Mich. 329.

Defendant also urges that the cancellations were justified by the delay, and that there was no sufficient proof of plaintiff's damages due thereto. These claims have received consideration, but in our opinion they are without merit.

The judgment is affirmed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.